IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

EMILY L. ROBERTS,

        Plaintiff,

vs.                                   **Case No. 08-4063-RDR**

MICHAEL J. ASTRUE,
Commissioner of Social
Security,
        Defendant.

**MEMORANDUM AND ORDER**

Plaintiff has filed an application for supplemental security income benefits. Plaintiff alleges an onset date of December 10, 2003. The application was denied by defendant on the basis of the November 2, 2007 opinion of an administrative law judge (ALJ). Defendant has adopted the opinion of the ALJ as the basis to deny plaintiff's application for benefits. This case is now before the court to review defendant's decision to deny benefits.

I. STANDARD OF REVIEW

The court reviews defendant's decision to determine whether the decision was supported by substantial evidence and whether the correct legal standards were applied. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence is such evidence that a reasonable mind might accept to support the conclusion. Rebeck v. Barnhart, 317 F.Supp.2d 1263, 1271 (D.Kan. 2004)(quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). The court must examine the record as a whole, including whatever in the record

fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the defendant's decision. Glenn, 21 F.3d at 984. The court may not reverse the defendant's choice between two reasonable, but conflicting views, even if the court would have made a different choice if the matter were referred to the court de novo. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).

II. ALJ DECISION (Tr. 14-23).

There is a five-step evaluation process followed in these cases. First, it is determined whether the claimant is engaging in substantial gainful activity. Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe." At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. Next, the ALJ determines the claimant's residual functional capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work. Finally, at the last step of the sequential evaluation process the ALJ determines whether the claimant is able to do any other work considering his or her residual functional capacity, age, education and work experience.

In this case, the ALJ decided that plaintiff's applications should be denied on the basis of the fifth step of the evaluation process. The ALJ decided that plaintiff maintained the residual functional capacity to perform jobs that existed in significant numbers in the national economy.

More specifically, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability, although she did provide in-home health care for her mother from some date in 2006 until June 22, 2007. He determined that plaintiff has the following "severe" impairments: a seizure disorder; osteoarthritis; thoracic outlet syndrome and hypothyroidism. The ALJ concluded that plaintiff's impairments did not together or separately meet or equal the requirements of one of the listed impairments in the Social Security regulations.

According to the ALJ, plaintiff retained the residual functional capacity (RFC):

> to perform light work, or work requiring lifting and/or carrying 20 pounds occasionally and 10 pounds frequently, sitting 6 hours in an 8-hour workday, and standing and/or walking 6 hours in an 8-hour workday (alternating between standing and sitting every 30 minutes). [Plaintiff] could not perform work requiring climbing ladders/ ropes/scaffolds, or more than occasionally reaching overhead with the left upper extremity. In addition, plaintiff should avoid exposure to hazards, such as unprotected heights, being around dangerous moving machinery, or operation of motorized vehicles, and exposure to temperature/humidity extremes or wetness.

(Tr. 18).

Regarding mental limitations, the ALJ determined that:

3

>[Plaintiff's] medically determinable mental impairments of a somatoform disorder (NOS), rule out depression, and a paranoid personality disorder, considered singly and in combination, do not cause more than minimal limitation in [plaintiff's] ability to perform basic mental work activities and are, therefore, non-severe. . . . [Plaintiff's] mental impairments cause no restrictions in . . . daily activities; only mild limitations in maintaining social functioning; only mild difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation.

(Tr. 17).

The ALJ further found that plaintiff's "statements concerning the intensity, duration and limiting effects of [her] symptoms are not entirely credible." (Tr. 21). More specifically, the ALJ determined that:

>[Plaintiff's] statements are not consistent with information provided by medical sources or consistent with each other. [Plaintiff's] reports to medical sources are inconsistent, they are inconsistent with statements made at the hearing, and there are no good explanations for any variations in these statements. [Plaintiff's] statements are also inconsistent with the Administrative Law Judge observations.

(Tr. 22).

The ALJ decided that plaintiff had no past relevant work. He noted that plaintiff was born in 1968 and had a high school education. He found that plaintiff maintained the residual functional capacity to perform light, unskilled work such as a tanning salon attendant or a microfilm monitor, or to perform sedentary, unskilled work such as a microfilm document preparer or a charge account clerk.

III.  ARGUMENTS

<u>Evidence of mental impairment</u>

Plaintiff's first argument is that the ALJ did not properly analyze the medical evidence.  The only medical evidence plaintiff discusses is evidence from Dr. John Arnold's psychological assessment of plaintiff in April 2003.  Dr. Arnold found that plaintiff had marked limitations in her ability to exercise judgment and make decisions, her ability to relate appropriately to co-workers and supervisors, and her ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting.  (Tr. 300).  He diagnosed plaintiff as having somatoform disorder (NOS), ruled out depression, with a provisional diagnosis of paranoid personality disorder.  (Tr. 304).  The ALJ refused to give Dr. Arnold's assessment substantial or controlling weight.  Indeed, the ALJ did not even find that plaintiff had a "severe" mental impairment.

Dr. Arnold had one visit with plaintiff and performed a clinical interview and mental status examination.  He administered the MMPI-2, the Beck Depression Inventory-PC (BDI-PC) and a Pain-Patient-Profile (P-3).  His report included this commentary:

> A working relationship [with plaintiff] was fairly easily established.  Her efforts across the [mental status exam] appeared to be in earnest and both her MMPI-2 and P-3 were judged valid and interpretable. . .
>
> Her affect was appropriate and somewhat inconsistent with her BDI-PC score of seven, suggesting mild to moderate depression.  This score was inconsistent with her MMPI-2

5

> profile, which did not suggest clinical depression. However, it was consistent with her P-3 depression scale clinically significant elevation. Her comments were generally logical and progressive without circumstantiality, tangentiality, or loosened of associations. Her comments did not appear to be consistent with a gross delusional disorder. . . .
>
> Individuals with similar MMPI-2 profiles are very mistrustful of others and tend to read danger into often benign situations. They project their own insecurities into these situations and as a result, tend to alienate others. To a lesser degree, they tend to be somatically preoccupied. The latter is consistent with her clinical elevations on her P-3 (depression and somatoform scales), also suggesting a somatoform disorder.

(Tr. 303-04). Plaintiff's scores suggested adequate concentration, good short-term and long-term memory functioning, and at least borderline intellectual functioning. While discussing plaintiff's activities of daily living, Dr. Arnold recounted:

> She can usually dress herself on a daily basis without assistance. She "love[s] to bake creative things" and do other cooking. She can't scrub very hard due to her physical pain, but will clean the bathroom, sinks and do the dishes. She usually shops with a list. She does not drive, usually opting to take the bus. For fun she likes to play on her computer, read and cook.

(Tr. 304).

The ALJ devoted one page of his opinion to a discussion of Dr. Arnold's assessment and plaintiff's mental impairments. The ALJ found that plaintiff's mental impairments did not cause more than a minimal limitation upon plaintiff's ability to work. In part, this was because plaintiff, according to the ALJ, has never received any counseling or professional treatment and plaintiff takes no medication for mental impairments. (Tr. 17). The ALJ

6

further noted that "in a questionnaire, dated July 8, 2004, [plaintiff] reported that she had never had problems getting along with bosses, police, teachers, landlords, or other people in authority; and that she had never lost a job because of problems getting along with people." (Tr. 17).  Plaintiff's daily activities were considered inconsistent with Dr. Arnold's opinions.  Finally, the ALJ also noted the inconsistency of results from the different tests administered by Dr. Arnold.

"[T]he opinion of an examining physician who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." Doyal v. Barnhart, 331 F.3d 758, 763 (10th Cir. 2003).  Nevertheless, the ALJ was still required to consider the opinion of Dr. Arnold and to provide specific legitimate reasons for rejecting it.  Id. at 764.  The ALJ was required to consider several specific factors in weighing Dr. Arnold's opinion.  These factors, which are set forth at 20 C.F.R. § 416.927(d), include:  the examining relationship; the treatment relationship; the relevant evidence in support of the opinion, including medical signs and laboratory findings; consistency with the record as a whole; the specialty of the medical source; and other factors which may tend to support or contradict the opinion.

Plaintiff contends that the ALJ totally disregarded Dr. Arnold's opinion and plaintiff's mental impairment.  We disagree. The ALJ discussed Dr. Arnold's findings at fair length and

determined upon his review of the record that plaintiff had various mild or minimal limitations which this court recounted in the previous section of this order.

Plaintiff contends that the ALJ failed to explain the weight he gave to Dr. Arnold's opinion. Again, we disagree. The ALJ stated that he was not giving Dr. Arnold's opinion substantial or controlling weight and his explanation adequately covered the various factors an ALJ may consider under § 416.927(d). Plaintiff asserts that the ALJ did not identify evidence inconsistent with Dr. Arnold's conclusions and improperly relied on the absence of evidence to support his opinion. The court is not persuaded by this criticism. The ALJ made reference to inconsistent results in the tests administered by Dr. Arnold. The ALJ also referred to evidence regarding plaintiff's activities and interaction with other people. Unlike the case cited by plaintiff, Thompson v. Sullivan, 987 F.2d 1482, 1491 (10th Cir. 1993), this is not a situation of an ALJ trying to support an RFC finding by relying upon an absence of evidence to demonstrate that a claimant could perform a certain level of work. Instead, the ALJ is critically evaluating the opinion of a doctor who examined plaintiff one time by considering, among other factors, the absence of evidence of mental impairment in the record to support the doctor's findings.

Plaintiff argues that the ALJ improperly reached medical conclusions on his own instead of accepting the conclusions of Dr.

8

Arnold. Plaintiff cites <u>Sisco v. U.S. Dept. of Health and Human Services</u>, 10 F.3d 739, 744 (10th Cir. 1993) for this point. In <u>Sisco</u>, the ALJ improperly rejected the opinion of a treating physician regarding a diagnosis of chronic fatigue syndrome. In this case, Dr. Arnold was not a treating physician. The ALJ was entitled to evaluate Dr. Arnold's conclusions according to the factors listed in § 416.927(d). Upon our review, we believe that the ALJ applied the correct legal standards and that his decision is supported by substantial evidence.

We acknowledge that this decision is made more difficult by the fact that Dr. Arnold provided the only mental and psychological testing of plaintiff. But, the court is not aware of legal authority finding that controlling weight must be given to the conclusions from an examining psychiatrist merely because no other mental examination has been conducted. See <u>Crisp v. Secretary of Health and Human Services</u>, 790 F.2d 450, 452-53 (6th cir. 1986) (refusing to follow psychologist's conclusion even though no other mental health authority is mentioned in the record). We find that the ALJ's decision was based upon a reasonable application of the factors listed in § 416.927(d), although a different decision may also have been reasonable.

<u>Plaintiff's RFC</u>

Plaintiff contends that the denial of benefits should be reversed because the ALJ improperly assessed plaintiff's RFC by

9

failing to incorporate the mental limitations found by Dr. Arnold. As previously discussed, we believe the ALJ properly considered and reasonably discounted the findings of Dr. Arnold with regard to plaintiff's alleged mental limitations.

### Credibility analysis

Plaintiff argues that the ALJ erred in making his credibility assessment because he relied too heavily upon outdated activity reports and failed to link his findings to substantial evidence. We reject this argument.

The ALJ considered and reviewed the objective medical evidence in the record. This is undisputed. The ALJ explained why he believed plaintiff's testimony was inconsistent with the medical evidence. (Tr. 21). The ALJ also considered plaintiff's treatment and medication, or lack thereof, and mentioned this in his credibility analysis. The medical record, in the court's view, does not substantiate a significant deterioration in plaintiff's condition. Therefore, the ALJ's reliance upon the activity reports, in spite of their age, does not seem unreasonable. In sum, the ALJ's credibility analysis followed legal standards and was supported by substantial evidence.

IV.  CONCLUSION

For the above-stated reasons, the court shall affirm the denial of benefits in this case.

**IT IS SO ORDERED.**

Dated this 10th day of April, 2009 at Topeka, Kansas.

                                        s/Richard D. Rogers
                                        United States District Judge